IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| v. | ) 2:20-cr-132 |
| JUSTIN McCONNELL, | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

Defendant Justin McConnell moves for reconsideration of this Court's previous order denying his motion to suppress physical evidence and incriminating statements. After carefully considering the parties' arguments, the record, and applicable caselaw, the Court hereby denies Mr. McConnell's motion.

## **STANDARD FOR RECONSIDERATION**

An order denying a motion to suppress is a non-final interlocutory order. *United States v. Williams*, 413 F.3d 347, 354 (3d Cir. 2005). A motion asking for reconsideration of such an order is evaluated in the same manner as reconsideration of civil interlocutory orders – *i.e.*, under the standard of Federal Rule of Civil Procedure 54(b). *United States v. Suggs*, No. 19-134, 2021 WL 4460024, at *4 (W.D. Pa. Sept. 29, 2021) (Conti, J.). This means that "the court may permit reconsideration whenever it is consonant with justice to do so," "even if the movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issued the underlying order, or the need to correct a clear error of law or fact to prevent manifest injustice." *Id.* at *5.

That said, "the movant must still establish good cause for why the court should revisit its prior decision." *Qazizadeh v. Pinnacle Health System*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) (citation omitted). That is because, "whether involving a final or interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point

1

of disagreement between the Court and the litigant." *Id.* (cleaned up). A motion for reconsideration is not a chance at a "second bite at the apple, or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question." *Id.* (cleaned up).

Here, the Court correctly denied Mr. McConnell's motion to suppress. Accordingly, reconsideration is not consonant with justice. However, the Court will discuss the merits of Mr. McConnell's argument to provide further explanation.

## DISCUSSION & ANALYSIS[1]

Ruling on the initial motion to suppress, the Court found that though Agent Eckenrod's testimony was only partially credible, Agent Hauser and his team still had the requisite reasonable suspicion to search Mr. McConnell's home.[2] That remains the case.

### I. Reasonable suspicion still existed despite Agent Eckenrod's alleged omission of additional information.

Mr. McConnell argues that the Court incorrectly applied *Franks v. Delaware* when it only excised the non-credible parts of Agent Eckenrod's report and testimony and determined that reasonable suspicion still existed. Mr. McConnell says the Court was required to go further; it needed to add the exculpatory information "left out" of Agent Eckenrod's report to Agent Hauser – specifically, that "Mr. McConnell left without the purported child." ECF 70, p. 5 (citing *United States v. Yusef*, 461 F.3d 374, 384 (3d Cir. 2006)). He argues that after supplying that information to the

---

[1] Having set forth the relevant factual background in its previous opinion, the Court will include only the facts relevant to the current motion.

[2] In its previous decision, the Court also ruled that the scope of the agents' search was proper and that though the officers' initial questioning violated Mr. McConnell's *Miranda* rights, only his initial statement would be suppressed. *United States v. McConnell*, No. 20-132, 2022 WL 1124822 (W.D. Pa. Apr. 15, 2022). In his motion for reconsideration, Mr. McConnell focuses on the threshold issue of reasonable suspicion.

report, there would be no reasonable suspicion of any parole violation, and no nexus to believe that Mr. McConnell had a child later in his home such that a search would be appropriate. The Court disagrees.

To be clear, the Court's prior opinion found one aspect of Agent Eckenrod's testimony to be lacking in credibility – his observation in the parking lot of Mr. McConnell loading the child into a car, and then seeing the child in the car as he drove away (the so-called "car testimony."). *McConnell*, 2022 WL 1124822, at *3 n.5. The Court stated: "it is implausible that agent Eckenrod actually saw the McConnells load a child into their car, as Agent Eckenrod claimed. … Moreover…Agent Eckenrod was close enough to Mr. McConnell's vehicle in the parking lot to have seen Mr. McConnell clearly, making it highly unlikely that he would genuinely mistake a large box for a child." *Id.*

Contrary to Mr. McConnell's argument, the Court did, in fact, take into account that Agent Eckenrod's testimony that Mr. McConnell left with the child was implausible (not true), but still found reasonable suspicion existed. Now, Mr. McConnell argues that the Court must explicitly supply what is effectively the opposite of the "car testimony." But Agent Eckenrod did not simply state that he saw Mr. McConnell with a child at the store, and omit the fact that the child did not drive away with Mr. McConnell. Instead, he affirmatively stated that Mr. McConnell loaded the child into his car and drove off. Thus, rather than omitted information, this is more akin to an affirmative assertion, which must be stricken – and which the Court did strike – from its analysis. *Yusuf*, 461 F.3d at 383-84 ("We have recognized a distinction between misrepresentations and omissions[.] … When faced with an affirmative misrepresentation, the court is required to excise the false statement from the affidavit. In contrast, when faced with an omission, the court must remove the falsehood created by the omission by supplying the omitted information to the original affidavit." (cleaned up)); *see also Wilson v. Russo*, 212 F.3d 781, 785 (3d Cir.

3

2000) (finding omissions where, for example, affiant gave suspect description and stated that one witness identified the defendant, but did not mention that the defendant was outside the given height range or that another witness had failed to pick the defendant out from a photo array).

But even if one can construe the opposite of the "car testimony" as omitted information that must now be supplied, it isn't material. When "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted," the Court must, importantly, "assess whether [they] were *material*, or necessary, to the finding" of reasonable suspicion. *Wilson*, 212 F.3d at 789 (cleaned up and emphasis added). The Court finds that the information that Mr. McConnell asks the Court to supply is not material under this standard.

Supplying the omitted information that Mr. McConnell suggests would still mean that Agent Eckenrod personally witnessed Mr. McConnell with a child in the store. From the portion of Agent Eckenrod's testimony and report that the Court found credible, he believed he observed that the child was "with" Mr. McConnell – *i.e.,* the child was one of Mr. McConnell's companions in the store. *See* ECF 48-3, p. 6 ("The offender was inside of the store with a woman and a small child. They had made a purchase before I did."); ECF 58, 108:15-19 ("When I was in the store, I did notice Mr. McConnell, noticed his wife with him, noticed a small child[.]").[3]

This purposeful contact would be a clear and serious violation, rather than incidental conduct. ECF 48-5, p. 9 ("You must not have any contact with anyone under the age of 18 years old without the prior written approval of probation/parole supervision staff. … You must immediately report any of these contacts to your parole agent. Contact is defined as follows: (1) actual physical touching; (2) writing letters,

---

[3] At the suppression hearing, the Court closely observed Agent Eckenrod's demeanor and testimony and from the context of the testimony fairly inferred that Agent Eckenrod's observation was that the child was with Mr. McConnell in a purposeful manner.

sending messages, buying presents…; (3) and verbal communication, such as talking, as well as nonverbal communication, such as body language (waving, gesturing, winking), sign language and facial expressions; (4) direct or indirect contact through a third party."). It would then be entirely reasonable for Agent Hauser to rely on this information and to conduct a search of Mr. McConnell's home to determine whether there was related evidence that such a parole violation occurred. That evidence might include "children's clothing, toys, games, books, dolls, stuffed animals, child-oriented videos." *Id.*[4] Indeed, possessing such material would independently constitute a parole violation. And if Mr. McConnell possessed it, it would likely be in his residence.

Put differently, even considering that Mr. McConnell was not seen leaving the parking lot of the store with a child does not change the reasonable suspicion that existed for what Agent Eckenrod witnessed and reported to Agent Hauser about what he saw inside the store. This in-store observation was an independent perceived parole violation, and considering the totality of the circumstances,[5] gave rise to reasonable suspicion to search Mr. McConnell's home for evidence of that particular and recent contact with a child.

## II. Because reasonable suspicion still existed, it applies as to all search team members.

Next, Mr. McConnell contends that because Agent Eckenrod was part of the team that executed the search of Mr. McConnell's home, his "exculpatory" knowledge should be imputed to the other team members under the collective knowledge

---

[4] Agent Hauser testified that he specifically was looking for this type of contraband in searching Mr. McConnell's home. ECF 58, 34:4-13.

[5] As the Court previously found, these circumstances also included the fact that Agent Eckenrod called Agent Hauser immediately on Agent Hauser's personal number to reach him on the weekend, as well as the fact that Mr. McConnell was a parolee. *McConnell*, 2022 WL 1124822, at *4.

doctrine. ECF 70, pp. 9-13. He argues that if the team knew that Mr. McConnell "did not leave Harbor Freight with the purported child," they would have had no reasonable suspicion "to believe that Mr. McConnell violated a condition of his parole" or "they would find any evidence of an alleged violation in his home. *Id.* at p. 13.

This argument misses the mark, because even if the Court imputes Agent Eckenrod's knowledge to all other team members, for the reasons explained above, the team collectively had reasonable suspicion that a violation – some purposeful contact with a child – occurred.

### III. The Court's characterization of Agent Eckenrod's testimony is fairly inferred from the record, but is immaterial to the reasonable-suspicion analysis.

Finally, Mr. McConnell asserts that there is no factual support that Agent Eckenrod saw Mr. McConnell "in line" with a child at Harbor Freight. ECF 70, p. 6 n.3. After reviewing the record again, the Court concludes that this finding was a reasonable inference, but was immaterial to the determination of reasonable suspicion regardless.

In his report, Agent Eckenrod stated that the McConnells were with a child in the store, and that they "had made a purchase before I did." ECF 48-3, p. 6. The Court construed this as meaning that he saw them in or near the check-out line. On the stand, Agent Eckenrod testified, "I did notice Mr. McConnell, noticed his wife with him, noticed a small child, as I was leaving from Harbor Freight to get into my vehicle." ECF 58, 108:15-19. He continued, "I had paid, had noticed them. ... I exited first. I went to my car, then they exited." *Id.* at 109:9-13. Regardless of who left the store first, the McConnells' accounts describe Agent Eckenrod reaching his car around the same time they reached theirs. *See* ECF 58, 155:3-12 ("We were walking out of Harbor Freight… Justin [] said, 'Well, there's Eckenrod." … I saw him walking to a car."); *id.* at 172:22-25 ("As I was putting the auger in the car, she returned the

6

cart.  And at that point Eckenrod came around and got between our cars and went to get into his car.").  Based on this similar timing, it is reasonable to infer that Agent Eckenrod and Mr. McConnell were checking out at similar times as well.

Ultimately, however, whether Agent Eckenrod saw Mr. McConnell *in line* near a child or somewhere else in the store near a child does not matter.  Agent Eckenrod reported that he saw Mr. McConnell "inside of the store with a woman and small child."  ECF 48-3, p. 6; *see also* ECF 58, 28:25-29:4 (Agent Hauser recalling Agent Eckenrod's phone call to advise "that he had seen Justin McConnell at the Harbor Freight store, and he was with a minor child").  As the Court previously discussed, Agent Eckenrod did not provide further details, and Agent Hauser did not ask for them.  *See id.* at 75:2-8.  Thus, the exact location within the store did not play a role in Agent Hauser's determination of reasonable suspicion.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Mr. McConnell's motion for reconsideration.

DATE:  August 11, 2022                    BY THE COURT:

                                          /s/ *J. Nicholas Ranjan*
                                          United States District Judge